McKENZIE *v.* BENNETT.

1. CANCELLATION OF INSTRUMENTS—FRAUD—BURDEN OF PROOF.
  In a suit to rescind contracts for the purchase of three city lots on the ground that plaintiff was induced to enter into them by reason of false representations by defendants' salesman, the burden was on plaintiff to establish said representations by a preponderance of the evidence.

2. APPEAL AND ERROR—FRAUD.
  In view of the fact that the trial judge had better opportunity to weigh the evidence submitted, the Supreme Court is unwilling to reverse his finding that the representations were made as claimed.

3. CANCELLATION OF INSTRUMENTS—EVIDENCE—SUFFICIENCY.
  Evidence *held*, sufficient to establish that the representations were relied on by plaintiff and that she was induced thereby to enter into the contracts.

4. SAME—RESCISSION—WAIVER.
  Where plaintiff was a domestic, without business experience, the fact that at the time she interviewed defendant for the purpose of rescinding the contracts she did not complain of the misrepresentations should not preclude her right to relief, in view of the fact that she had not then been advised of her legal rights.

Appeal from Wayne; Cross (Orien S.), J., presiding. Submitted January 3, 1928.    (Docket No. 16.)    Decided February 14, 1928.

Bill by Bessie McKenzie against Gordon F. Bennett and another for the rescission of land contracts on the ground of fraud.    From a decree for plaintiff, defendants appeal.    Affirmed.

*Sol Blumrosen,* for plaintiff.

*Ralph B. Clark,* for defendants.

[1]Cancellation of Instruments, 9 C. J. § 189; [2]Appeal and Error, 4 C. J. § 2868; [3]Cancellation of Instruments, 9 C. J. § 195; [4]Id., 9 C. J. § 79.

SHARPE, J. Plaintiff is a domestic, without business experience. In the summer of 1925, George F. Chestnut, a sales agent for the defendant company, called at the house at which plaintiff was working to see another party and met plaintiff and sought to interest her in the purchase of some lots he was selling for the defendant company. He called upon her several times thereafter. She testified that he said that "the water was in, that the contract was made for the sidewalks and the shade trees and cinderizing the roads in the fall." She finally went with him to look at the lots and saw some crocks, which seemed to confirm his statement about the water. It was her first experience in the purchase of real estate. She testified that she relied on such statements, and was induced thereby to enter into a contract for the purchase of a lot, and a little later for the purchase of another lot. A few weeks later, she was induced by another agent of the defendant company to purchase an adjoining lot, and did so in reliance on the representations made to her by Chestnut. The purchase price of these lots was $1,550, $1,225, and $1,175, respectively. The plaintiff made down payments of $10 in cash and notes for $220, $174, and $166, respectively, and thereafter monthly payments, in all amounting to the sum of $987, the last of which were made on July 23, 1926. These payments were all made at the defendant Bennett's office. She testified that she did not see the lots again until August, 1926, and then discovered that no water mains had been installed, nor had any sidewalks been constructed; that the street had not been cinderized, nor had any shade trees been planted; that she then saw Mr. Bennett, and told him she had been "misled," and "wanted her money back;" that she gave him her contracts, and he handed them back to her. She soon after filed this bill, praying for rescission of the contracts and the return of the money paid by

her.     From a decree awarding her the relief prayed
for, defendants appeal.

Plaintiff testified that the representations were made
as claimed by her.     Chestnut denied that they were.
She also testified that she entered into the contracts
on the assumption, founded on Chestnut's assurances
that she could quickly dispose of the lots at a consider-
able profit.     She had no money with which to build
on the lots, and no intention of doing so.     Her only
resources were her savings out of her earnings as a
domestic.     Her down payment of but $10 on each lot
strongly supports her testimony in this respect.     It
therefore seemed of much importance to her that the
lots were then supplied with water and that contracts
had been let for the other improvements.     The chances
of a quick sale would be enhanced thereby.     The
burden was on her to establish the representations
by a preponderance of the evidence.     While the con-
tract itself obligated the vendor to pay for the side-
walks and plant shade trees and cause water mains to
be laid and sewers to be constructed along the avenues,
the representations claimed to have been made in no
way conflicted with this provision.     They were an
assurance to plaintiff that certain of these had already
been installed or contracted for.     In view of the better
opportunity of the trial court to weigh the evidence
submitted, we are unwilling to reverse his finding
that the representations were made as claimed.

We think it also established that the representations
were relied on by her and that she was induced thereby
to enter into the contracts.     It is urged that in her
interview with Mr. Bennett, when she sought rescis-
sion, she made no such complaint.     While we are in-
clined to accept his statement of what there occurred,
we do not think it should preclude us from affirming
the decree.     She had had no business experience.
She had not at that time consulted an attorney, and

had not been advised of her legal rights.    The contract was subject to the approval of Mr. Bennett.    It is conceded that the representations were binding on him as well as on the land company.

The decree is affirmed, with costs to appellee.

NORTH, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.

Chief Justice FLANNIGAN and the late Justice BIRD took no part in this decision.